# United States Bankruptcy Court

## District of Massachusetts

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MARY G. ADAMSON,**
    Debtor

Chapter 7
Case No. 04-14224-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**SANDRA SINGER,**
    Plaintiff
v.
**MARY ADAMSON, CENTURY 21,
TREON REALTY AND INVESTMENTS,
INC., EVANTHIA TREON, PETER COSTA,
and ANDREA NAGY,**
    Defendants

Adv. P. No. 05-1356

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

Several matters are before the Court: 1) the Adversary Complaint filed by Sandra Singer ("Singer"); 2) the Motion to Dismiss under Fed. R. Bankr. P. 7012(b) filed by Century 21 Treon Realty and Investments Inc., Evanthia Treon, Peter Costa and Andrea Nagy (the "non-debtor defendants"); and 3) the Request for Emergency Hearing filed by Mary Adamson (the "Debtor") pursuant to which the Debtor requests "sanctions be placed on Sandra Singer forbidding any further filings in this Court against me, Mary Adamson, and 46 Halsey Road, Hyde Park, MA." The Debtor also requested that Singer be ordered to

stay away from her new residence, 133 Cornell Street, 1st Floor, Roslindale, MA.[1]

The issues presented by these pleadings include whether Singer, who asserts that she holds a claim against the Debtor, which this Court has described as an unliquidated, contingent, and disputed unsecured claim, can proceed with a complaint which includes allegations that the Debtor is not entitled to a discharge under 11 U.S.C. § 727 and that her claim is nondischargeable under § 523(a); whether Singer's complaint should be dismissed because she stated "plaintiff does not consent at this time to entry of final order or judgment by the bankruptcy judge which are not in plaintiff's favor;" whether the Debtor is entitled to the protective order she requests with respect to discovery by Singer; and whether this Court has jurisdiction over the non-debtor defendants.

For the reasons set forth below, the Court shall grant the Debtor's Motion for a Protective Order and shall enter an order enjoining Singer from seeking any form of discovery from the Debtor and from contacting the Debtor either in person or in writing until further order of the Court. The Court also shall grant the non-debtor defendants' Motion to Dismiss because this Court lacks subject matter jurisdiction over Singer's claims against them. Further, the Court shall continue generally all remaining matters in this adversary proceeding until such time as it receives a certified copy of a final order showing that the decision of the Land Court either has been reversed or affirmed by an appellate court.

---

[1] Though captioned a "Request for Emergency Hearing, the substance of the Debtor's pleading sets forth a request for a protective order. Accordingly, the Court shall treat the Request as a Motion for a Protective Order.

## II. FACTS

### A. Background

The facts pertinent to the resolution of the above issues are not in dispute and have

been set forth in pleadings filed by Singer in the Debtor's bankruptcy case, as well as in

prior memoranda issued by this Court. *See* In re Adamson, 312 B.R. 16 (Bankr. D. Mass.

2004). The Court takes judicial notice that Singer has filed numerous pleadings in the

Debtor's bankruptcy case and is the only party in interest contesting the Debtor's discharge

or the dischargeability of any debt. Indeed, the Chapter 7 Trustee filed a "Report of No

Distribution" on February 19, 2005, stating that, after diligent inquiry, "there is no

nonexempt property available for distribution to creditors."

The Debtor filed a voluntary Chapter 13 petition on May 19, 2004. On Schedules I

and J-Current Income and Expenditures of Individual Debtor(s), she disclosed that her

expenses exceeded her income by approximately $500 per month. In her Chapter 13 Plan

filed on June 2, 2004, she proposed to pay creditors through the liquidation of her home

located at 46 Halsey Road, Hyde Park, Massachusetts (the "Property"). Prior to the filing

of the Debtor's bankruptcy petition, Singer had sued the Debtor in the Massachusetts Land

Court, Department of the Trial Court,[2] seeking to compel the Debtor to sell the Property

---

[2] According to 9 Joseph R. Nolan and Bruce Henry, Mass. Prac. Series, § 2.11
*Land Court* (2004), "[t]he Land Court is a court of record whose powers relate to the
registration of titles to land, and to a large variety of other matters concerning real
property. As to matters within its jurisdiction, it has all the powers which the Superior
Court has in law. It has been said, however, that the Land Court is a statutory court, not
of general but of strictly limited jurisdiction. (footnotes omitted).

to her, as "Singer alleged Adamson had agreed to do," *see* <u>Singer v. Adamson</u>, No. 292128, 2003 WL 23641985 at *1 (Mass. Land Ct. December 24, 2003), and had obtained a lis pendens.   Although the Land Court dismissed Singer's complaint, stating that "after examining the complaint in the light most favorable to Singer, and giving full consideration to the applicable statutory and decisional law, that no binding contract ever was formed," <u>id.</u> at *1 and that "[t]he facts alleged in the complaint fail, as matter of law, to show the creation of a binding contract, even if all those alleged facts were to be believed," <u>id.</u> at *2, it refused to dissolve the lis pendens.

On January 1, 2005, approximately six months after filing a Chapter 13 petition, the Debtor moved to convert her Chapter 13 case to a case under Chapter 7. The Court granted the Debtor's motion two days later.   Prior to the conversion of her case to Chapter 7, Federal National Mortgage Association ("FNMA") had filed a Motion for Relief from the Automatic Stay and for Leave to Foreclose Mortgage with respect to the Debtor's Property. On February 9, 2005, the Court granted FNMA's relief from the automatic stay imposed by 11 U.S.C. § 362(a).   Approximately 10 weeks later, the Debtor filed a notice with the Court stating that the foreclosure sale was scheduled for April 29, 2005.

From the pleadings, which will be discussed below, there is no dispute that the foreclosure sale was conducted on April 29, 2005, and that the Property has been sold to a third party.   The Debtor no longer resides at the Property.

In <u>In re Adamson</u>, this Court addressed issues raised by the Debtor's Motion for Order Authorizing Private Sale of Estate Property Free and Clear of Liens (the "Sale

4

Motion"), through which the Debtor sought an order permitting her to sell her right, title and interest in the Property to Patrick and Maureen Oser for the sum of $260,000, free and clear of liens, claims and encumbrances, pursuant to 11 U.S.C. § 363 of the Bankruptcy Code, as well as Singer's Opposition to the Sale Motion, which she supplemented several times. In <u>Adamson</u>, this Court noted that Singer asserted the following:

> that the Debtor filed her bankruptcy petition in bad faith; that the Debtor is "ineligible for relief under Title 11 or any bankruptcy law;" that Adamson and her attorney "have engaged in malicious abuse of process in the filing of the bankruptcy petition in this case and this motion [the Sale Motion];" and that she holds a secured claim by virtue of her lis pendens ("[t]he creditors [sic] claim for money damages is an unsecured claim. The creditors [sic] judicially endorsed lis pendens is a secured claim.").

312 B.R. at 17-18 (footnote omitted). In a footnote, the Court further noted that "Singer also stated that 'Adamson [is] a person fully able to pay her creditors but who has chosen not to, has filed her petition and motion for the improper ulterior motive of seeking to maliciously prevent this creditor from having the house, which house this creditor has a lis pendens on and Adamson is contractually and otherwise required to sell to this creditor.'" <u>Id.</u> at 18 n. 2.

The Court also observed that Singer had filed a Motion for Sanctions in which, among other things,

> she reiterated her prior allegations as to the Debtor's motives and requested an order requiring the Debtor to sell the Property to her, as well as an order requiring the Debtor and her attorney to "pay financial compensation and punitive financial damages to this creditor for their willful and malicious abuse of process in filing this bankruptcy petition and motion not for its intended purpose but for an improper ulterior motive, including compensation for the severe emotional distress, loss of time, delay and any other damages they have caused." In addition, Singer filed a Creditor's

5

Supplemental Opposition to the Sale Motion in which she maintained that she is "an entity" with an interest in the Property entitled to adequate protection. In this pleading, she asserted that her interest is a lis pendens and a "lis pendens is not a lien." Nevertheless, in the same pleading, she stated "[a] person with a lis pendens is a secured creditor of that property."

Singer also filed a Second Supplemental Opposition to Debtor's Sale Motion; a Supplement to Creditor's Opposition to Debtor's Sale Motion, attaching to it a copy of a draft of a brief she intends to file in the Massachusetts Appellate Court; a Supplement to Creditor's Motion for Sanctions; a Reply to Debtor's Response to Creditor's Opposition; a "Notice of Lien on Any Money Paid to Peter Costa and/or Century 21 Treon Realty, Creditor's Motion (If Necessary) for a Lien and to Attach any Money Paid Peter Costa and/or Century 21 Treon Realty and Creditors [sic] Response to Debtor's Application to Employ Real Estate Broker;" Creditor's Reply to Opposition to Notice; and Post Creditors [sic] Meeting Supplement to Pending Motions. In essence, Singer objects to any sale of the Property on grounds that she has a lis pendens on the property, as well as a right to specific performance of a sale of the Property to her, and an interest in or lien on the Property.

Id. at 18 (footnotes omitted).

In Adamson, this Court determined, based on Judge Piper's decision and existing law, that the notice of lis pendens obtained by Singer did not create any lien or an interest in the Property. In addition to finding that Singer did not have an "interest" in the Debtor's Property, the Court also concluded that she had not demonstrated that she had a lien or an attachment against the Debtor's Property which would attach to the proceeds from a sale of the Property or entitle her to adequate protection. This Court stated:

The Land Court dismissed her complaint. She has no interest or right to specific performance. Accordingly, the lis pendens, which as the Court has stated is the equivalent of a notice, does not secure payment, performance or constitute a charge against the Debtor's property. All Singer has is a lis pendens against the property. Without more, she has not established that she has a lien or a secured claim. Her assertion that she has a secured claim by virtue of her lis pendens is without merit. See 11 U.S.C. § 101(37). Singer has not and cannot cite any authority for the proposition that a lis pendens

is the equivalent of a lien or secured claim.

*Singer has no more than a contingent, unliquidated and disputed unsecured claim against the Debtor; see* 11 U.S.C. § 101(5), and a recorded notice that, until dissolved, alerts potential buyers of the Debtor's property that, if she were to prevail on appeal, the sale might be overturned.    Under these circumstances, Singer's Opposition is devoid of merit and will be overruled.

Id. at 21 (emphasis supplied).

With respect to the other pleadings filed by Singer, this Court stated:

The Court's examination of Singer's position permits resolution of her Motion for Sanctions and her "Notice of Lien" and concomitant requests for a lien or attachment against any monies paid to Peter Costa and/or Century 21. Singer admitted in her pleadings that she has not filed suit against either Costa or Century 21, although she attempted to do so in the Land Court. Therefore, her requests for a lien or attachment are premature. Additionally and more importantly, *any claims Singer may have against these parties have no effect on the Debtor's bankruptcy estate. Therefore, this Court lacks jurisdiction over her claims against Peter Costa and Century 21 and other parties with whom she may have dealt at Century 21. See Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); see also In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991).*

Id. (emphasis supplied).

The Court added:

With respect to Singer's Motion for Sanctions, the Court denies the Motion. To repeat, Singer has no more than a lis pendens - - specifically, a notice of a pending appeal from an <u>adverse</u> judgment against her. She also has, at most, a contingent, unliquidated, and disputed claim against the Debtor for monetary damages. Nevertheless, in her Motion for Sanctions, she alleged, *inter alia,* that the Debtor filed her bankruptcy petition and Sale Motion "for the primary purpose of collaterally attacking state Land Court ruling [sic] rulings denying Adamson's request to not issue and then to dissolve the lis pendens in the federal bankruptcy court;" and "[t]his malicious abuse of process by Adamson and Grossberg [the Debtor's attorney at the time] has caused this creditor to suffer severe emotional distress, has caused loss of time, has caused delay, and possibly other damages."

Id. at 21-22. The Court indicated that Singer's allegations, particularly that the filing a

bankruptcy petition by Debtor and her attorney constituted a malicious abuse of process,

were "both serious and potentially sanctionable." Id. This Court concluded:

> This Court's review of Singer's voluminous pleadings compels the
> conclusion that Singer, not the Debtor, is attempting to collaterally attack the
> Land Court's ruling by her insistence that the Property be conveyed to her,
> despite the Land Court's adverse ruling. In view of Singer's untenable
> positions with respect to her status in this case as either the holder of an
> interest in the Property and as a secured creditor, *Singer would be well advised
> to review the provisions of Fed. R. Bankr. P. 9011 before filing any more motions for
> sanctions against the Debtor or her attorney or any more pleadings that are
> unwarranted by existing law.*

Id. at 22 (emphasis supplied).

In addition to its ruling on the Debtor's Sale Motion, the Court also entered *sua*

*sponte* an order granting both Singer and the Debtor relief from the automatic stay to

prosecute the appeal of the decision of the Land Court dismissing Singer's complaint and

an order overruling Singer's objection to the Debtor's homestead exemption under Mass.

Gen. Laws. Ch. 188, § 1. *See* Singer v. Adamson, No. 04- 14244, slip op. (Bankr. D. Mass.

November 9, 2004). In that decision, this Court stated:

> In view of the Land Court's ruling and Singer's tenuous status as a creditor,
> only one inference can be drawn from Singer's multiple pleadings, namely
> that she is, in effect, driving up the cost of the Debtor's bankruptcy in an
> attempt to obtain title to the Property. Singer admitted as much when she
> stated: "[a]s was previously pointed out the amount of money Adamson is
> paying to file for bankruptcy exceeds the $7000 difference between the
> contract price with this creditor of $253,000 and the alleged sale price with
> the other alleged buyer of $260,000. . . . Adamson's filing for bankruptcy
> clearly shows that it is cost [sic] more to file for bankruptcy than keeping her
> contract with this creditor."

Slip op. at 21. The Court added: "While tactics such as those employed by Singer may

achieve a modicum of success outside of bankruptcy, they will not be tolerated in a

8

bankruptcy case, where the interests of all creditors, as well as those of the Debtor, must

be protected. Id. at 21-22. Finally, this Court observed the following:

> From its review of the pleadings filed in this case, the Court is compelled to observe that Singer has not minded this Court's admonition to refrain from filing inflammatory and unfounded pleadings. Singer has lambasted the Debtor for allegedly fraudulent conduct based upon "circumstantial" evidence and promised to file pleadings in support of her contention that unspecified debts are nondischargeable, parroting the provisions of 11 U.S.C. § 523(a)(2) and (a)(6). While Singer has raised numerous issues evidencing a superficial knowledge of the provisions of the Bankruptcy Code, her pleadings demonstrate that she is unaware of its fundamental purposes, procedures and applicable burdens of proof.
>
> The Debtor's Chapter 13 case appears to be at an impasse because of the notice of lis pendens that affects her Property. Her Chapter 13 plan, as filed, depends upon the sale of the Property. This Court authorized the Debtor to sell the Property on July 12, 2004, but it is unclear whether the proposed sale has closed. Undoubtedly, the lis pendens constitutes a cloud on title that may affect the willingness of any buyer to close the sale.

Id. at 22-23.

The court-authorized private sale did not take place and the mortgagee, and FNMA,

obtained relief from the automatic stay to conduct a foreclosure sale. The sale occurred,

and the Property no longer belongs to the Debtor, who moved to another residence.

B. Singer's Complaint

On May 13, 2005, Singer filed a 15-page complaint against the Debtor, Century 21,

Treon Realty and Investments, Inc., Evanthia Treon, Peter Costa and Andrea Nagy. Singer

divided her complaint into five sections: Jurisdiction, Parties, Introduction, Facts and

Demand for Judgment. She did not set forth specific counts against each of the parties.

In the section captioned, "Jurisdiction," Singer stated, inconsistently, 1) that this

9

Court has jurisdiction; 2) that this Court has "supplemental/pendant jurisdiction pursuant

to 28 U.S.C. § 1367 over all claims. . .;" 3) that "Plaintiff does not know what the words core

and non core mean as pertains to bankruptcy law but is under the impression that this case

contains elements of both core and no core proceedings;" 4) that "[t]his is a case filed

pursuant to 11 U.S.C. 523 and 11 U.S.C. 727 [sic] in which plaintiff objects to the discharge

of any debts/money Adamson owes her and is seeking a ruling pursuant to 11 U.S.C. §§

523 (2)A, 523(4), 523(6), 727(4)A, 727 (4)B and/or 727(3) [sic] that the money Mary

Adamson the debtor/defendant owes to plaintiff is not discharge able [sic];" and 5) that

she is seeking financial compensation including compensatory, punitive and triple

damages for the Debtor's wrongdoing as well as the wrongdoing of her agents, "joint tort

feasors [sic] and coconspirators [sic]," based on a theory of vicarious liability.   In her

Jurisdiction section, Singer concluded:

> Plaintiff does not have knowledge at this time of the effect of consenting or
> not consenting to having entry of final orders or judgement [sic] by the
> bankruptcy court judge or even what the bankruptcy court considers to be
> final orders or judgement [sic].  Thus, *plaintiff does not consent at this time to
> entry of final orders or judgment by the bankruptcy judge which are not in plaintiff's
> favor.*  Plaintiff preserves all rights of appeal to and consideration by both the
> district court and appeals court of any unfavorable ruling.  Plaintiff is under
> the impression that objections to discharge are required to be filed in the
> Bankruptcy Court.

(emphasis supplied).

In her Introduction, Singer parroted the language of the Bankruptcy Code, stating

that Adamson engaged in conduct proscribed by 11 U.S.C. §§ 523, 727. In particular, Singer

maintained that the Debtor claimed that "she was unable to pay her debts because she was

10

paying a mortgage of around $1100.00 a month but in fact was not paying her mortgage at all leaving around $1100.00 of income unaccounted for." Additionally, Singer maintained that she has made "repeated requests of Adamson to in [sic] this bankruptcy case to produce the other alleged offers (and alleged P & S, names, addresses, and phone numbers of their alleged buyers, and amount of other alleged offers). The production of the other alleged offers and P & S would show fraud by Adamson and it is believed would provide evidence of Adamson's contract with plaintiff."

In the "Facts" section of her Complaint, Singer set forth details surrounding her desire to purchase the Property, attaching copies of email exchanges she had with Costa and Nagy. Singer stated that she "relied to her detriment on the written representation, promise and offer transmitted through Costa as Adamson's authorized agent to sell plaintiff the home for $253,000 . . . ." She added:

> Adamson claims and the Land Court found to the effect that the Costa [sic] and Nagy i.e. Century 21 and Adamson perpetrated fraud and lied to plaintiff [sic] when they represented that Adamson agreed to sell plaintiff the property for $255,000 and $253,000 (agreed to the $2000 good faith concession) and that Costa and Nagy i.e. Century 21 and Adamson transmitted the offer to sell plaintiff the property for $255,000 and $253,000 with no intent to be bound by it, not for the purpose of selling plaintiff the home but for an improper motive of fraudulently, deceitfully and deceptively tricking plaintiff into paying money and signing the GBRB [Greater Boston Real Estate Board] form (which they knew plaintiff would not pay or sign unless the house was offered, contracted, guaranteed and promised to her) so the defendants could use it as leverage to obtain an offer from another buyer and to fraudulently, deceitfully, deceptively trick plaintiff into not buying any other home so defendants would have plaintiff and her money to buy the home in the event that they not find another buyer [sic].

11

In addition, Singer outlined numerous other charges against the Debtor, including allegations 1) that the Debtor "willfully and maliciously refuse [sic] to pay her mortgage . . . allowing the house to go to foreclosure;" 2) that "any money over the contract amount between plaintiff and Adamson is money plaintiff has a right to;" 3) that Adamson and her lawyers repeatedly attempted to willfully and maliciously steal money from plaintiff willfully maliciously defaming plaintiff fraudulently demanding attorneys fees [sic] and sanctions; and 4) that "Adamson has a history, state of mind and intent of repeatedly breaching contracts and is willing to say and do anything no matter how dishonest, willful and malicious to get out of a contract." Singer concluded that the defendants are liable to her for the following: breach of contract/interference with contractual relations; violation of G.L. ch. 93A/ unfair and deceptive business practices; fraud, deceit and misrepresentation; and intentional infliction of emotional distress.

Singer fashioned 11 requests for relief in the final section of her complaint captioned "Demand for Judgement [sic]." In particular, Singer requested a rulings that "[t]he debts/money owed to Adamson [sic] are not discharge able [sic]" and that the defendants pay the following:

> the amount of money it will cost for plaintiff to be able to buy without delay a house equal or better in terms of location, size, condition and amenities etc at a price no more than plaintiff would have paid in August of 2003 ($253,000.00 - any differences in interest rates, lower grants etc). This amount is estimated to be $600,000 in light of the higher interest rates, lower grants, and that plaintiff will have to go to a higher price point to buy a suitable house in light of the low amount of houses available at the subject price point.

The Debtor filed an answer, captioned "Response" to Singer's complaint. Costa and

12

Nagy, each filed responses and together with the other defendants filed a Motion to

Dismiss for lack of jurisdiction, arguing that they were not listed as creditors and did not

file proofs of claims in the Debtor's bankruptcy case, adding that Singer's claims against

them are all state law claims over which this Court has, at best, non-core jurisdiction.

Without leave of court, Singer filed an "Amendment to Adversary Complaint" on

June 16, 2005, *see* Fed. R. Bankr. P. 7015, in which she alleged that Clifford Ciccarone, the

winning bidder at the foreclosure sale conducted by FNMA, "had inside trader information

that the rest of the people at the auction did not have but should have had and that he had

engaged in a conspiracy with Adamson as herein indicated." Singer, referring to the Debtor

as a "deadbeat occupant with a history of non payment of her debts," added that the

auction was "invalid, rigged, fixed, and corrupt, and an unfair and deceptive business

practice . . . ."   In both her complaint and Amendment to Adversary Complaint, Singer

demanded a jury trial.

## III. DISCUSSION

### A. The Motion to Dismiss and Singer's Opposition

With respect to Singer's claims against the non-debtor defendants, the Court shall

dismiss Singer's complaint against them with prejudice.  Singer knew of should have

known, as a result of this Court's published decision, *see* In re Adamson, 312 B.R. at 21,

that this Court lacks subject matter jurisdiction over Singer's claims against them.  *See*

Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); *see also* In re G.S.F. Corp., 938 F.2d

1467, 1475 (1st Cir. 1991).

13

This Court's jurisdiction is set forth in 28 U.S.C. §§ 157, 1334(b) and has been discussed in numerous decisions. In <u>Goldstein v. Marine Midland Bank (In re Goldstein)</u>, 201 B.R. 1 (Bankr. D. Me. 1996), the court succinctly stated:

> Congress defined the scope of bankruptcy jurisdiction in 28 U.S.C. § 1334 and authorized the district courts to delegate that jurisdiction to the bankruptcy courts in 28 U.S.C. § 157(a). Section 1334 provides that district courts shall have 'original and exclusive' jurisdiction of 'all cases under title 11,' § 1334(a), and 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.' § 1334(b). The district courts may refer bankruptcy jurisdiction to bankruptcy courts: 'Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.' § 157(a).

<u>Id.</u> at 3-4. "[R]elated-to" jurisdiction is the most expansive component. *See* <u>Boyajian v. DeLuca (In re Remington Dev. Group, Inc.)</u>, 180 B.R. 365, 368 (Bnakr. D. R.I. 1995). With respect to a determination of "related-to" jurisdiction, courts generally adopt the standard first articulated by the United States Court of Appeals for the Third Circuit: "whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" <u>Pacor, Inc. v. Higgins</u>, 743 F.2d at 994; <u>In re G.S.F. Corp.</u>, 938 F.2d at 1475.

Singer's invokes this Court's jurisdiction against the non-debtor defendants based upon 28 U.S.C. § 1367.[3]  As the Supreme Court noted in <u>Raygor v. Regents of Univ. of</u>

---

[3] Section 1367 provides the following:

(a) Except as provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental

14

Minn., 534 U.S. 533, 539 (2002), " Congress enacted the supplemental jurisdiction statute,

28 U.S.C. § 1367, as part of the Judicial Improvements Act of 1990." The statute codifies the

_____

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

28 U.S.C. § 1367.

ancillary and pendent jurisdiction of the district courts. "Under § 1367, the district court may exercise 'supplemental jurisdiction' over non-federal claims if they are so related to claims over which the court has jurisdiction so as to comprise a single constitutional 'case or controversy' within the meaning of Article III." Goldstein, 201 B.R. at 6. There appears to be a split of authority as to whether 28 U.S.C. § 1367 can expand bankruptcy court jurisdiction. *Compare* In re Pegasus Gold Corp., 394 F.3d 1189 (9th Cir. 2005), and In re Eads, 135 B.R. 387 (Bankr. E.D. Cal. 1991) *with* Matter of Walker, 51 F.3d 562 (5th Cir. 995), and In re Foundation for New Era Philanthropy, 201 B.R. 382, 398 (Bankr. E.D. Pa. 1996).

In Pegasus Gold, the Ninth Circuit concluded that the doctrines of pendent and ancillary jurisdiction provide an additional source of jurisdiction for bankruptcy courts. It determined that "the bankruptcy court could properly exercise supplemental jurisdiction over these claims," stating that "[p]ursuant to 28 U.S.C. § 1367, district courts have 'supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" 394 F.3d at 1194-95. It added: " This circuit has applied § 1367 to bankruptcy claims, even when the subject matter jurisdiction is based on "related to" bankruptcy jurisdiction. Id. at 1195 (citing Sec. Farms v. Int'l Bhd. of Teamsters, 124 F.3d 999, 1008 n. 5 (9th Cir.1997)).

Despite Ninth Circuit support for bankruptcy court jurisdiction under 28 U.S.C. § 1367, Fifth Circuit in Matter of Walker, 51 F.3d 562 (5th Cir. 995), and the bankruptcy court in New Era reached a different conclusion. *See also* In re Bass, 171 F.2d 106 (5th Cir. 1999).

16

In <u>New Era</u>, the court observed: "[b]y its express terms . . . section 1367 is applicable only to the district court; it makes no reference to the bankruptcy court (nor does the legislative history surrounding its enactment)." 201 B.R. at 398.  It explained:

> It is essential to recognize that bankruptcy judges do not have a jurisdictional grant co-extensive with the district court. On the contrary, 28 U.S.C. § 157(a) makes it very clear that the district court may only refer to bankruptcy judges bankruptcy cases and bankruptcy proceedings which arise in or under the Code (core matters) and related proceedings. *See* <u>Matter of Walker</u>, 51 F.3d at 569-70. If a proceeding is unrelated to the bankruptcy case, the district court has no authority to refer it to a bankruptcy judge--even if the proceeding falls within some other federal jurisdictional grant.
>
> As noted above, by virtue of section 157(a), bankruptcy courts can only consider bankruptcy related matters. Thus, the analysis in <u>W.J. Servs., Inc.</u> is unpersuasive. . . .
>
> Accordingly, a number of courts have concluded, and I agree, that the recent enactment of the supplementary jurisdiction statute in favor of the district court does not, by its very terms, purport to alter the scope of bankruptcy jurisdiction under section 1334 or the power to refer matters found in section 157(a). *E.g.,* <u>Matter of Walker</u>, 51 F.3d at 572 ("Because there is no Congressional statute conferring upon the *bankruptcy courts* the power to exercise supplemental jurisdiction, we find no error in the district court's conclusion that the bankruptcy court did not have the power to hear Cadle's contribution claim against Svara") (emphasis in original); <u>Halvajian v. Bank of New York</u>, 191 B.R. 56, 58 (D. N.J. 1995); <u>In re Alpha Steel Co.</u>, 142 B.R. at 470-71; <u>In the Matter of Romar International Georgia, Inc.</u> [198 B.R. 401,406-07 (Bankr. M.D. Ga. 1996)]; <u>In re Remington Development Group, Inc.</u> [180 B.R. 365 (Bankr. D. R.I. 1995)]; <u>In re Fisher</u>, 151 B.R. 895 (Bankr. N.D. Ill.1993); <u>In re Houghton</u> [164 B.R. 146, 148 (Bankr. D. Wash. 1994)]; *see also* <u>In re Dow Corning Corp.</u>, 187 B.R. 934, 937-38 (E.D. Mich. 1995) (district court concludes that it does not have supplemental jurisdiction of claims unrelated to a bankruptcy case). Whether a constitutional infirmity would be created if Congress attempted to do so, I need not decide, for Congress made no such attempt.

201 B.R. at 398-99.  *See also* <u>Goldstein</u>, 201 B.R. at 6-7.

This Court has determined that it lacks subject matter jurisdiction over Singer's

17

claims against the non-debtor defendants under 28 U.S.C. 1334(b). Her claims against them can have no conceivable effect on the administration of this bankruptcy estate, which the Trustee has fully administered. Id. Stated another way, if Singer were to prevail on her claims against the non-debtor defendants, any damages she could recover would not be available for distribution to the Debtor's creditors as they would not be assets of the bankruptcy estate. This Court concludes that, in the absence of "related to" jurisdiction, it would be impermissible to assume jurisdiction over Singer's claims against the non-debtors pursuant to 28 U.S.C. § 1367(c), particularly because Singer did not "consent at this time to entry of final orders or judgment by the bankruptcy judge which are not in plaintiff's favor," and demanded a jury trial, to which she would be entitled with respect to some of her claims against the non-debtors, but not with respect to her claims under 11 U.S.C. §§ 523, 727.

Singer did not assert her claims against Costa, Nagy and the other non-debtor defendants in an appropriate state court forum before the Debtor filed her Chapter 13 petition.  As this Court has noted, Singer has at best an unliquidated, contingent and disputed unsecured claim against the Debtor. Singer's claims against the non-debtors are as tenuous as her claim against the Debtor in view of Judge Piper's ruling.  Thus, exceptional circumstances, such as the ones present in this adversary proceeding, compel this Court to decline jurisdiction under 28 U.S.C. § 1367. Assuming, *without deciding*, that this Court has supplemental jurisdiction, a dubious proposition in view of the decisions in the First Circuit, *see* Goldstein, 201 B.R. 6-7; Remington Dev. Group, 180 B.R. at 372-73, this

18

Court shall abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1367(c).

In sum, the Court lacks jurisdiction over Singer's claims against the non-debtor defendants either under 28 U.S.C. § 1334(b) as matters "related-to" the Debtor's bankruptcy estate or under 28 U.S.C. § 1367. Accordingly, the Court shall enter an order granting the Motion to Dismiss filed by the non-debtor defendants and overruling Singer's Opposition.

B. <u>The Request for Sanctions</u>

This Court's review of Singer's Adversary Complaint compels the conclusion that it is predicated upon a reversal of Judge Piper's decision. If Singer position's with respect to the validity of a contract with Adamson proves to be unfounded, she will have no claim for damages as she will be unable to establish that the harm she has allegedly suffered was proximately caused by the Debtor's conduct, rather than her own misperceptions of the law and the facts. Judge Piper found that Singer's complaint for specific performance failed to state a claim upon which relief could be granted. Indeed, he determined that "after examining the complaint in the light most favorable to Singer, and giving full consideration to the applicable statutory and decisional law, that no binding contract ever was formed." <u>Singer v. Adamson</u>, 2003 WL 23641985 at * 1. Thus, until such time as Singer obtains a favorable appellate ruling, this Court shall continue generally this adversary proceeding. Further, until such time as Singer establishes that she has a liquidated claim based upon a final order, this Court shall enter an order enjoining her from attempting to seek discovery from the Debtor or from contacting the Debtor *in any fashion,* including

19

through the mails or in person.[4]

This Court notes that the pleadings filed by Singer contain inflammatory characterizations of the Debtor.   Moreover, as noted above, no other creditor or party in interest has questioned the Debtor's honesty of purpose and need for bankruptcy relief, including the Trustee charged with the administration of her Chapter 7 case.  In view of the Debtor's requests for protection from repeated discovery requests made by Singer and from potential contact with Singer, the Court finds that the issuance of a protective order is warranted.

## IV. CONCLUSION

In view of the of the foregoing, the Court shall enter order granting the Defendants' Motion to Dismiss, albeit on different grounds, and allowing the Debtor's Motion for

---

[4] The Court takes judicial notice that Superior Court, Department of the Trial Court stated the following in another matter involving Singer:

> The Boston Housing Court, Massachusetts Appeals Court and the S.J.C. have litigated this issue repeatedly and all of the courts have invariably entered judgment in favor of Davis, holding that there was no wrongful eviction of Singer and that she was otherwise not entitled to possession of the premises. Moreover, *the S.J.C. has specifically ordered that Singer is forbidden from filing any more actions in any court of the Commonwealth of Massachusetts regarding any dispute over her tenancy at the premises unless a judge in the Court in which the action is filed specifically authorized the filing.* Accordingly, as the filing of the plaintiff's amended complaint in Middlesex Superior Court was not specifically authorized by myself or any other judge of the Court, this Court also finds, as a matter of law, that defendants' motion to dismiss the plaintiff's complaint in its entirety is ALLOWED.

Singer v. Davis, No. 9804798, 1999 WL 1411364, *1 (Mass.Super. December 16, 1999).

Sanctions to the extent she seeks a protective order.  The Court shall defer ruling on the

issue of sanctions at this time.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 6 , 2005
cc: Sandra Singer, Mary Adamson, Richard J. Sullivan, Jr., Esq.

21